By the Court. Mason, J.
This case presents several points of interest and importance; some of which are of no ordinary difficulty. They have been, elaborately and ably argued by the counsel for the respective parties, and the court has been .greatly aided in its judgment by their extensive and learned investigations.
Before proceeding to the main points in controversy, we shall ©onsider the formal objections raised by the demurrer.
*472 First. It is contended by the defendant that the bill is multifarious,—that it seeks relief not only by reason of the representations which induced the plaintiff to purchase the bonds of the company, and which are alleged to have been false and fraudulent, but also in regard to the stock note of $30,400 of the defendant, which, it is charged, was fraudulently surrendered to him by the board of directors. If such be the necessary construction of the bill, the objection would, in our judgment, be well founded; for the bill would then present two claims not only distinct from, but inconsistent with each other, one in effect disaffirming the purchase of the bonds, and asking that it might be rescinded in consequence ‘of the defendant’s deceitful and fraudulent misrepresentations concerning them, and the other, affirming the purchase, and insisting that the plaintiff, as a purchaser, has a right to call on the defendant for their payment out of the amount of the note, which, he says, belongs to the company, and was fraudulently withdrawn from it. A careful perusal of the bill, however, has satisfied us that it is not liable to this objection. It does indeed set forth the facts of the giving of the stock note by the defendant, and of its subsequent surrender to him by the company, but these matters are stated in connexion with several other’s, only as parts of the fraudulent scheme of the defendant and his associates, in order to give color to the report and statement of the condition of the company by which the plaintiff was induced to purchase the bonds. They are introduced as evidence of a premeditated design to deceive and defraud. The specific prayer for relief, however, has no reference to the note, but simply prays that it may be declared, that the plaintiff was “induced to purchase the said sterling bonds by the aforesaid fraudulent contrivances and practices of the said George Griswold and his confederates, and that such purchase as between the plaintiff and the defendant, may be declared void and rescinded, and that the defendant may repay to the plaintiff the purchase money and expenses with interest.” It may be true, as suggested by the defendant’s counsel, that the bill contains sufficient allegations respecting the note, which if proved, would entitle the plaintiff to relief with regard to it under the general prayer. Tet it would not *473 be proper for the court to interpret the bill as necessarily calling for such relief, when the plaintiff himself does not pray for it, and the effect of such interpretation would be to give to the bill that objectionable feature which the pleader has been careful to avoid.
Moreover, if the bill is to be treated as seeking relief with regard to the note, it is defective for want of parties, and the next objection of the defendant that it should have been filed on behalf of all the bond-holders as well as of the plaintiff would undoubtedly be good; for all those who are in a similar situation with the plaintiff, ought to have an opportunity of participating in a fund in which they all have an equal interest. But, as Ave have seen, the bill merely seeks to make the defendant respond to the plaintiff individually, for the fraud which he has committed upon him, by inducing him to purchase the company’s bonds. There is no common fund here to be distributed; it does not even appear that there are any others who stand precisely in the same situation with the plaintiff in respect to the bonds issued by the company. And we think that the principle adopted by the late chancellor in Dart v. Palmer, (1 Barb. Ch. R. 92,) is applicable to both these objections. He there held that ifthe complainant in his bill claims specific relief, and then adds a prayer for such further or other relief as may be proper, and the case made by his bill entitles him to the specific relief prayed for, and no other parties are necessary to entitle him to that relief, the court at the hearing ought not to give other or further relief under the general prayer, when persons not before the court are necessary parties to such relief, even when the case made by the bill would have entitled the complainant to that relief also against the defendant, if all the proper persons had been made parties. How, the ground of the demurrer in this case is, that other parties are necessary so far as relates to the stock note of $30,400, and that no relief can be granted in regard to it unless they are before the court; but if the plaintiff does not ask for relief on that ground, and the frame of his bill is such that in its present state Avithout the addition of other parties he cannot obtain it at the hearing, but he can obtain the specific relief for which he prays, upon what principle is the *474 coiu't called upon to declare that he shall frame his bill with a view to that relief which he does not ask, especially when the alteration would subject the bill to the fatal objection of multifariousness? Both these objections therefore must be overruled.
The objection that the other directors are not made parties is also untenable.
We are not called upon by the frame of the bill, to decide whether all the directors or trustees of a company are necessary parties to a bill seeking to charge them for a fraudulent breach of trust, although the authorities seem to be decisive that they are not. (Attorney General v. Wilson, 1 Cr. & Ph. 1; Cunningham v. Pell, 5 Paige 612.) The defendant in this case was not in any sense a trustee for the plaintiff, at least until after he purchased the bonds. The fraud complained of was perpetrated, if at all, before their purchase; it was only in consequence of the purchase, and by its means, that the defendant and the other directors were brought into the relations of trustees and cestui que trust, if the ownership of the bonds can be said to have constituted that relation. And the ground on which the defendant is sought to be charged is, not that he violated his duty as trustee for the bondholders, arising out of his position as a director, but that as a man .he violated the laws of truth and fair dealing, which all are bound to. observe in their transactions with each other. It matters not in this point of view, that others united with him in these frauds. The general principle, that there can be no contribution between wrong doers, and that each is liable for all the wrongful acts in which he participated, is well established both at law and in equity. (Attorney General v. Wilson, 1 Cr. & P. 1; and the authorities cited in note to page 28.)
Having disposed of these objections to the frame of the bill, and for want of parties, we come to a more important inquiry, viz. whether a court of equity has jurisdiction of the case.
The defendant insists that the bill states a mere legal claim, while the plaintiff on the other hand contends that it presents a case peculiarly of equitable cognizance.
We have no doubt that the case made by the bill comes within the principle of Pasley v. Freeman, and that the plaintiff *475 upon proof of the facts he has alleged, might, on the authority of that case, recognized as it has been repeatedly in our courts, have recovered in a court of law, damages for the injury he had sustained, and that the amount of the bonds with interest and expenses would be the true measure of those damages. This is substantially the relief prayed for in this bill; and we do not think it would have formed any impediment to a recovery in a comt of law, as was contended by the plaintiff’s counsel, that there was no direct communication between himself and the defendant. It would have been sufficient, that he had been deceived by the false representations which the defendant sanctioned and circulated in regard to the situation of the company, with the intent to induce persons, on the faith of such representations, to purchase the bonds.
This was expressly held in the case of Allen v. Addington, 7 Wend. 9, affirmed in the court of errors, 11 Wend. 374. In that case there was no direct communication between the plaintiff and the defendant. The defendant, however, had written a letter to a third person respecting Baker, who bought the goods of the plaintiff, and that third person represented to the plaintiff that he would trust Baker on Addington’s representations, and the court laid down the broad principle, that if a person intending to defraud somebody, gives a general recommendation of credit to an insolvent person, any one who sustains damage by reason of such recommendation, is entitled to an action for such damage, grounded on the fraud.
But does it follow that because the plaintiff can obtain in substance the same relief at law, as in equity, therefore this court has no jurisdiction ? This is a question of no small difficulty. The cases are conflicting, and it is, perhaps, impossible to reconcile them all. There were several referred to by the counsel for the defendant, which it was contended conclusively showed that a court of equity had no jurisdiction in a case like the present. Among them was the case of Newham v. May, 13 Price 749, in which Lord Chief Baron Alexander says, “ It is not in every case of fraud that relief is to be administered in a corn-t of equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud upon the sale of a chattel, no one, I appre *476 hencl, ever thought of filing a bill in equity.” And he adds, that the case before him was no more than a common case of fraud by means of misrepresentation, raising a dry question of damages; in effect a mere money demand. The case before him was that of a bill filed by a purchaser of real estate, not to rescind a contract on the ground of fraud, but for compensation for the difference in the actual value of the property sold, and the stated value as appearing by the rental, which was represented to be ¿6110 per annum, when in fact it was only £89, and this was a suit, merely to recover damages, the party retaining and affirming the contract. The bill was dismissed, not, however, on the ground of want of jurisdiction, but because it was not supported by the evidence.
In Russell v. Clark's Exrs., (9 Cranch 69,) also cited by the defendant’s counsel, and which was a bill in equity, seeldng to make the defendants responsible for the amount of certain protested bills, on the ground of two letters of guaranty representing that the drawers were perfectly responsible ; Chief Justice Marshall remarked, that on the question of fraud the remedy at law was complete, and that if a discovery was not needed, or if. the answer disclosed nothing, and the plaintiff supported his claim by evidence in his own possession, unaided by the confessions of the defendant, the established rules limiting the jurisdiction of courts required that he should be dismissed from the court of chancery, and permitted to assert his rights in a court of law. But the bill in that case was sustained on other grounds.
In Bradley v. Bosley, (1 Barb. Ch. C. 125,) also cited on the argument, Chancellor Walworth, in a very elaborate opinion, intimates his approbation of the remarks made by the Lord Chief Baron, and Chief Justice Marshall, in the case above quoted, and after referring to some cases decided in the court of apjDeals in Kentucky, adds, “ I am disj>osed to follow these decisions, so far as to hold that a bill in equity, for the purpose of obtaining a compensation in damages merely, to be paid by the defendant personally, cannot be sustained, where the defendant makes the objection at the proper time by demurrer or answer, that the complainant has a full and perfect remedy by action at law against the defendant.” He admits, however, the general *477 rule to be “ that in case of fraud a court of equity has jurisdiction, although the party may obtain relief in an action at law.” In this case, too, the bill was sustained on other grounds.
The cases in Kentucky, referred to by the chancellor, were Hardwick v. Foster’s Administrator, 1 Bibb. 212; Cocke v. Hardin, Littell’s Select Cases 374; and Blackwell v. Oldham, 4 Dana 195. Upon examination, it will be found that they all admit and allege the jurisdiction of the court of equity, in setting aside contracts founded in fraud and misrepresentation, but maintain that if a party who has been defrauded does not seek to rescind a sale, but affirms it, and asks for damages which he has sustained by reason of fraud or imposition practised on him in relation to it, he must seek his damages in a court of law. We apprehend the decision is correctly stated in the Kentucky cases. If your claim is solely for damages, whether for breach of the contract or for fraud in making it, and you seek not to rescind it altogether, you are, as a general rule, confined to your action at law; but if you seek to have the contract rescinded and declared void, you may have relief in equity*although you may only recover money, and the same amount that you would have recovered at law/ In the suit at law, the money by way of damages, is the principal object; in equity, however, the rescinding of the contract is the principal, and the recovery in money is an incidental, though a necessary consequence.
However this may be, and without undertaking to pronounce positively on this point, we apprehend that there are certain other principles well established, which will lead us to a correct conclusion. Thus, it is one of the doctrines of a court of equity, that where a plaintiff has a plain, adequate, and complete remedy at law, a court of equity generally will not interfere, and for this reason they will not as a general rule sustain a bill for damages merely, whether for breach of contract or for tort, a court of law giving in such case full and adequate relief. The application of this rule, however, must be controlled and governed by another equally well established; that if the jurisdiction originally has properly attached in equity on account of the supposed defect of remedy at law, that jurisdiction is not changed or taken away by the fact that courts of law have subsequently exercised juris *478 diction in similar cases. “ This has been repeatedly asserted,” Mr. Justice Story remarks, (1 St. Eq. Jur. § 641,) “by courts of equity, and constitutes, in some sort, the pole-star of its jurisdiction.” While then on the one hand, courts of equity will not assume jurisdiction where there is already a complete and adequate remedy at law; so on the other hand, when their jurisdiction is once established, whether in consequence of the inability or refusal of courts of law to grant relief, or otherwise, they do not lose jurisdiction by reason of the subsequent greater liberality or enlarged powers of courts of law.
The decision of the point before us, then depends, not merely on the question whether the party has an adequate remedy at law, but also on this other question, whether the case falls within one of the acknowledged heads of equity jurisdiction; for if it does, the mere fact that a court of law will now grant the same relief as a court of equity, does not oust the previously well established jurisdiction of the latter. A reference to a few adjudged cases will abundantly confirm this position.
Thus, the jurisdiction of chancery was settled and acknowledged in the case of lost bonds. It had been originally assumed, because courts of law would not entertain a suit on a bond without a prof&rt. But when afterwards they allowed a plaintiff to allege in his declaration the loss of his bond as an excuse for not making profert, and to recover on proving its loss and contents, it was uniformly, held that the liberality of courts of law on this head did not deprive chancery of its jurisdiction. (1 St. Eq. Jur. § 81; Atkinson v. Leonard, 3 Brown C. C. 218; Kemp v. Prior, 7 Ves. 249: Walmesly v. Child, 1 Ves. 341; Toulman v. Price, 5 Ves. 239.)
So, the jurisdiction of chancery in matters of account, has long been well established. It was assumed at a time when the old action of account was the only method of settling accounts at common law. Yet it has frequently been held, that the jurisdiction has not been taken away, in consequence of the courts of law adopting more simple and expeditious modes of settlement, by action on the money counts and references to referees; even in those cases where the oath of the defendant is not required to establish the case. This doctrine was expressly recognized by *479 Chief Justice Kent and Mr. J. Thompson, in Ludlow v. Simond, (2 C. C. E. 39-51;), and in the case of The Corporation of Carlisle v. Wilson, (13 Ves. 275,) Lord Erskine said, “It cannot be maintained that this court interferes in matters of account only when no remedy can be had at law. The contrary is notorious. The proposition asserted against this bill,” he added, “ is that this court ought to refuse to interfere by directing an account, if an action for money had and received or indebitatus assumpsit can be maintained. " That proposition cannot be supported.”
In matters of fraud, the jurisdiction of the court of chancery is probably coeval with its existence. There is no period in the history of the court, when it did not possess it. It is concurrent with courts of law in all. cases of fraud, except that of wills of real estate, and the court it is said will not lay down rules restrictive of such jurisdiction, but will proceed in every case of fraud upon its own peculiar circumstances. (1 Fonb. b. 1, § 3, p. 12.) The objection now made has been frequently made before, and it has been uniformly held, in cases which turned upon -the question of jurisdiction, as far as our researches have extended, that the jurisdiction in cases of fraud was not taken away because the parties had an adequate remedy at law. We will mention only two or three cases, and those of a similar character with the one now before us. The first is Colt v. Wollaston, 2 P. Wms. 156, decided in 1723, in which the bill was filed to recover back two several sums which the plaintiff had paid to the defendants as managers of a land security and oil patent company for extracting oil out of radishes. The master of the rolls observed, “ It is no objection that the parties have their remedy at law, and may bring an action for money had and received for the plaintiffs own use, for in casés of fraud the court of equity has a concurrent jurisdiction with the common law, matter of fraud being the great subject of relief here. Accordingly, cases of this nature have frequently met with relief in this court.” The next case we shall cite is Green v. Barrett, 1 Simons 45, decided in 1826. That was a bill to recover back deposits paid by a subscriber to a joint stock company, where the project was a bubble. The bill was demurred to, and one ground of demurrer was, that the only remedy of the plaintiff *480 was by an action for money had and received; but the vice-chancellor, after remarking on the facts, said that the only question was whether a bill in equity would hold or whether the plaintiff must have recourse to law; and as it appeared the whole scheme was a mere snare to entrap the unwary, on the authority of Colt v. Wollaston, he overruled the demurrer. We shall look in vain for any case in England for the one hundred and three years intervening between Colt v. Wollaston and Green v. Barrett, in the least affecting the authority of these cases. Green v. Barrett was followed in 1828 by Blain v. Agar, 5 Sim. R. 289, which was similar in its general features, and was similarly decided. Indeed, so well was the jurisdiction considered to be established in England, that in the late case of Seddon v. Connell, decided in 1840, (16 Sim. 58,) and which in some respects resembled the case before us, although the bill was demurred to, yet the objection we are now considering was not even raised.
All the cases which we have cited, under this head, were cases of deceitful and fraudulent representations, where the only relief sought was, as in the present, the rescinding of the contract and the repayment of the money paid by the deceived and defrauded parties, as a consequence of declaring the contract void: and it is worthy of notice, that until the case of Pasley v. Freeman, decided in 1189, it never had been solemnly decided by a court of law, that an action could be maintained for fraudulent and ■ deceitful representations of the kind mentioned in that case. Even then, Mr. Justice Grose dissented from the opinion of the other judges; and Lord Erskine in adverting to that case in Clifford v. Brook, (13 Ves. 131,) as late as 1806, stated that a considerable difference of opinion at that time prevailed upon it, and that many of the most correct judges appeared to have been surprised. Lord Eldon, it is well known, always maintained that Pasley v. Freeman was wrongly decided, and that a court of equity alone had jurisdiction in such cases. (Evans v. Bicknell, 6 Ves. 186.)
Since then, before the decision of Pasley v. Freeman, courts of law did not entertain jurisdiction in cases like the present, and the only remedy was in a court of equity; it lies upon the *481 party objecting to the jurisdiction of this court to show when and how it was deprived of that jurisdiction, which it formerly unquestionably possessed. Until that is done we shall feel bound to decide that the original jurisdiction of chancery in cases of fraud, remained when this bill was filed, in its pristine vigor.
It was also urged as a reason for turning the plaintiff over to a court of law, that he had waived an answer under oath. This would be a sufficient reason, if the relief asked for depended on the discovery under oath. There are many cases in which a party’s title to relief in a- court of chancery depends on such discovery, and in which, when the discovery is waived, the whole foundation of equitable jurisdiction is taken away. Cases of fraud, however, do not depend on the discovery sought, but belong, as we have seen, to the original jurisdiction of the court.
The next and most important question is, whether the claim is barred by the statute of limitations. If the plaintiff had no right to come into a court of chancery at all, then the claim he now makes is clearly haired by the statute. If he can sustain himself in this court, then, whether the statute is a bar or not, depends upon the construction to be given to the forty-ninth, fiftieth, and fifty-first sections of the fourth chapter of the third part of the revised statutes. They are as follows: .
“ § 49. Whenever there is a concurrent jurisdiction in the courts of common law, and in courts of equity, of any cause of action, the provisions of this title limiting a time for the commencement of a suit for such cause of action, in a court of common law, shall apply to all suits hereafter to be brought for the same cause, in the court of chancery.
“ § 50. But the?last section shall not extend to suits over the subject matter of which a court- of equity has peculiar and exclusive jurisdiction, and which subject matter is not cognizable in courts of common law.
“ § 51. Bills for relief on the ground of fraud, shall be filed within six years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not after that time.”
We have seen that the jurisdiction in the case before us is *482 concurrent in courts of law and equity, and if the forty-ninth section governs, then the statute of limitations is a bar to this suit. If, however, the fifty-first section applies to cases of concurrent as well as of exclusive equitable jurisdiction, the result may be different; and the question is, did the legislature mean by the fifty-first section, to exempt from the operation of the forty-ninth section all bills for relief in cases of fraud, or did they mean to confine that section to those bills in which courts of equity had exclusive jurisdiction?
Prior to the passage of this act, there was no statute of limitations, which, in terms, applied to courts of equity. But the principles adopted by those courts on this subject were well settled. In cases of concurrent jurisdiction with courts of law, they held themselves to be bound by the statutes of limitation. They acted not merely by analogy, but in obedieuce to them. They would, nevertheless, interfere in cases of alleged fraud, to prevent the statute from running, where to allow it to run would be inequitable or unjust; and this upon an acknowledged principle on which courts of equity give relief, viz: to prevent an advantage gained at law from being used against conscience.
Thus in a case of fraud, where the jurisdiction was concurrent, if the statute of limitations was a bar to the suit at law, although under ordinary circumstances, it would also be a bar in equity, yet if the fraud had not been discovered until more than six years after its commission, equity would not allow the statutory bar to be set up, if the suit was commenced within six years after the discovery. While the fraud was concealed, said Lord Eedesdale in Hovenden v. Lord Annesley, (2 Sch. & Lef. 634,) the statute of limitations ought not in conscience to run. See also Bond v. Hopkins, 1 Ib. 418-431; Blannerhasset v. Day, 2 Ball and B. 129; 2 Story Eq. Jur. § 1521, and 1521 a. This was expressly admitted to be the rule in chancery by our supreme court, in Troup v. Smith, 20 John. 33, and by the court of errors, in Murray v. Coster, Ib. 583; and it is so consonant with the first principles of justice, that ■ it has been adopted ex necessitate, in those states where the court of chancery is not established. Thus in Massachusetts, the plaintiff may avoid the bar of the statute, by replying that the cause of action *483 had been fraudulently concealed from his knowledge by the defendant, and that it was not discovered by him until six years before the commencement of the action. (First Mass. Turnpike Co. v. Field, 3 Mass. 201; Homer v. Fish, 1 Pick. 435. See also Pennock v. Freeman, 1 Watts 401; Jones v. Conoway, 4 Yeates 109.) It is not necessary to allow such a replication where a plaintiff can have relief in chancery, and therefore it was held in this state, in Troup v. Smith, cited above, that such a replication was not good.
The question now recurs, what did the legislature mean when they enacted the several sections quoted above ? Did they intend to declare that in those cases of fraud, in which courts of equity have peculiar and exclusive jurisdiction, the statute should not begin to run until after the discovery of the fraud, but in those cases in which the courts of law and equity had concurrent jurisdiction, the statute should begin to run from the commission of the fraud, though it might not be discovered until six years afterwards ? Considering the large class of cases of this kind in which the jurisdiction of the two courts is concurrent, such an event would be a great innovation upon established law; it would create a distinction between the two kinds of causes in equity, where none ought to be made, and would afford a protection to fraud which did not before exist, and which, in our judgment, never ought to exist.
We cannot suppose that such was the intention of the legislature. If' it had been they could easily have said so; or if they had omitted the fifty-ffrst section altogether, the construction contended for by the defendant’s counsel, would have followed as a necessary consequence; for section forty-nine applies in terms to all suits to be thereafter brought in the court of chancery, where there should be a concurrent remedy at law, and section fifty expressly excepts suits, over the subject matter of which courts of equity have peculiar and exclusive jurisdiction. Why then was the fifty-first section added, without specifying that the bills for relief intended by it were those only over the subject matter of which courts of equity had peculiar and exclusive jurisdiction ? Manifestly, because the section was intended to qualify and restrict the general terms of section *484 forty-nine, and to apply a different rule to bills for fraud, whether they were cases of concurrent or exclusive jurisdiction, from that adopted in all other cases, and thus to declare or enact by statute, the rules which we have seen had been adopted by the courts on this subject.
This appears also from the notes of the revisers, (3 E. S. 2d ed. p. 705,) in which they refer to the cases before cited from 20 Johns, and also to 2 Ball & Beatty, 129, 2 Sch. & Lef. 636, and state it to be their intention to enact as part of the statute law, the rules laid down in those cases; and as the legislature adopted the sections in the form proposed by the revisers, it is natural to infer, in the absence of all evidence to the contrary, that they adopted also their views.
We have met with only one case in our boohs involving the construction of the sections of the statutes we have been considering ; the case of Bertine v. Varian, 1 Edwards’ Ch. R. 343, where the vice chancellor referred to this statute; and after deciding that the case before him was one in which a court of law has concurrent jurisdiction with a court of equity, he observes with regard to the allegation that there was fraud and concealment on the part of the defendants, that such facts, whenever they exist, are sufficient to prevent the operation of the statute in the view of a court of equity; thus giving a construction to the statute then before him in accordance with the views above expressed.
But it is objected, that admitting the case comes within the fifty-first section, yet the bill is defective in not stating why the fraud was not discovered sooner; and it was contended that as the bill upon its face showed a fraud committed more than six years before; the plaintiff, if he wished to get rid of the bar of the statute, should not merely state by way of anticipation, the fact of the discovery of the fraud within six years, but show that it could not, with reasonable diligence, have been discovered sooner. The correctness of this position was not seriously questioned by the counsel for the plaintiff, but he insisted that the allegations of the bill were sufficient to satisfy the most stringent application of the rule contended for.
It appears from the bill, that the plaintiff resided in England. *485 He was therefore unable personally to make himself acquainted with the true state of the case. The fraudulent representations were put forth by the directors of a monied institution with a large capital, who were entrusted by the legislature of one of the states with a most important and expensive public work, requiring not only a large amount of funds, but integrity and enterprise of no ordinary character. The report and statement by which the plaintiff was deceived, were, it is alleged, artfully and purposely filled, by these directors, of wThom the defendant was one, and with his aid, concurrence and sanction, with fraudulent and deceptive statements, calculated and intended to mislead ; some of which though literally true, were yet substantially false and deceptive by reason of the manner of stating them, and the suppression of important facts which ought to have been disclosed. The particulars of these statements are set forth, and also the points in which they are alleged to have been false and fraudulent. The bill then alleges that in the year 1836, the company declared a dividend with the same fraudulent purpose, when they had made no profits or earnings out of which it could have legitimately been declared, by means of which and of the statements beforementioned, the stock advanced to one hundred and two per cent.; that the plaintiff purchased upon the faith of this report and statement, and of the dividend and the letter of the defendant set out in the bill; that after his purchase of the bonds in 1836, the interest on them was regularly paid by the company until January, 1841, since which time no interest had been paid; that the company with the like fraudulent purpose had declared another, dividend in January, 1837, without having made any earnings or profits upon which to declare the same, and that the frauds above specified were not discovered by the plaintiff until after the first of January, 1841, and within six years next before the filing of the bill.
How, it appears to us, that the • plaintiff had a right to rely upon the statements put forth by such authority as true; especially when there was not only no circumstance calculated to excite suspicion, but the statements were artfully contrived to prevent any suspicion being excited of their untruth; and he had a right to continue his confidence in the soundness of the institu *486 tion, when a subsequent dividend was declared, and as long as the interest on the bonds was punctually paid. We think then that the defendant cannot object that the plaintiff did not sooner discover the frauds which he and his associates are alleged to have been so careful to conceal. There was in fact nothing to put him on inquiry till the default in the payment of the interest.
The plaintiff, moreover, was in England; the company was in this country. He did not come or send here to invest in these bonds—they sent to him in a foreign country. The report and statement were made for the avowed purpose of giving him, in common with other capitalists in England, that information which, by reason of their distance, they could not learn from personal observation; and the defendant and his associates were therefore under the most sacred obligations to deal fairly and honestly, and the plaintiff was justified in placing the most implicit confidence in the statements made under such circumstances.
But admitting it to have been his duty to have made earlier inquiries, of whom was he to inquire ? Of the defendant ? He had his letters. Or of him and the other directors ? He had their official report and statement. Was it to be expected that they would give the lie to these formal and carefully prepared documents, and confess them own fraud, especially while the company was still in good credit ? Could he have examined the books of the company ? Asa bond—holder before the maturity of the bond, and while the interest was regularly paid, it is at least doubtful whether he could have demanded an inspection of the books, any more than the holder of a note of an individual can, before its maturity and while the maker is in good credit, pry into his private transactions. He may require to be informed of his true situation before he give him credit, but having done so, he must remain satisfied until an actual insolvency happens.
We think it manifest from these considerations that the plaintiff has sufficiently anticipated in his bill the defence of the statute of limitations, and that the facts stated fully and satisfactorily account for his not having discovered the fraud charged until within six years before the commencement of the suit.
*487 The result at which we have arrived then, is, that this demurrer cannot he sustained, hut the defendant must answer.
We trust that none of our remarks will he construed as.expressing any opinion, on the truth or falsity of the charges made by the plaintiff. We have considered the bill, merely as a pleading, admitted by the demurrer to be true for the sake of the argument. And we have proceeded on the same assumption, with the same view and object, viz: to determine whether the bill on its face can be maintained.
The counsel for the defendant has properly interposed this demurrer. He was perfectly justified, even though all the material charges of the bill can be shown to he untrue, in presenting the very grave questions raised by it to the consideration of the court, and endeavoring to relieve his client from the expense and vexation necessarily attending the defence of a suit of this kind. All that we have decided is, that the plaintiff has made out a prima facie ease. And that on the supposition that the statements in his bill are true, he had a right to bring the suit in this form, and to support his allegations by proof. Beyond this we have not intended, and it would he manifestly improper for us to express any opinion.
The demurrer is overruled, and the defendant must answer the hill, and pay the costs of the demurrer in forty days.