HORATIO P. BLOOD *vs.* MANUEL S. DRUMMOND.

Penobscot.   Decided January 24, 1878.

*Contract.   Words, stumpage.*

The defendant (by written agreement) promised to convey to the plaintiff an interest in certain timber land when he had received his advances and certain costs and expenses "from the stumpage cut on the land."

*Held,* That "stumpage cut on the land" meant money received or expected to be received from the sale of licenses to cut and remove timber from the land.

*Held,* also, that the defendant would be liable to account for cuttings made by himself, or himself jointly with others, at the value upon the land of what was cut and taken by him and them therefrom.

*Held,* further, that the criterion of value, where the defendant was the operator himself alone or with others, would be the market rates; or, if there were no definite market prices for licenses to cut, the actual value thereof may be ascertained from other considerations; such as proximate market rates, the market value of the logs at their place of destination, or at the nearest point to the township where logs had a market value, and the costs and risks of getting them there.

ON REPORT.

ASSUMPSIT to recover damages for breach of a written contract, signed by the defendant, dated December 19, 1867, and of the following tenor :

" I, Manuel S. Drummond, of Bangor, in consideration of services performed by Horatio P. Blood, of said Bangor, at my request, in exploring part of Township No. 5, in Ninth Range in county of Piscataquis, and north of and adjoining the town of Brownville, and the same part of said township conveyed to me by two deeds dated December 19, 1867, one of which is from

Preserved B. Mills, and the other from Asa Pingree and others, trustees of David Pingree, said deeds conveying to me a parcel of land across the easterly end of said township, and about three miles and two rods wide, do promise to, and agree with the said Blood, that whenever I, or Stephen F. Barton, to whom I have given an obligation to convey one undivided third of said land on the performance of certain conditions, shall have received from the stumpage cut on said land, money enough to pay all the consideration paid for said land, and all expenses and taxes heretofore paid by me, and that shall hereafter be paid by me or him, the said Barton, and all reasonable charges and contingencies pertaining to, or incidental to said land and the management of the same, and annual interest on the whole of said sums at the rate of ten per cent. per annum, I will make and execute, or cause to be made, executed and delivered to said Blood, or his assigns, a quitclaim deed of one undivided sixth part of all said lands and interest I acquired by said two deeds," &c.

The plaintiff contended that the defendant was accountable for stumpage money from the date of the contract to date of writ, September 16, 1876, sufficient to pay for the land and all expenses chargeable to it, and that the plaintiff was entitled to his deed. The defendant contended to the contrary.

No question was made but the defendant should credit the amount of stumpage received from third parties, but he resisted the claim of the plaintiff that in his own operations, whether they were successful on the whole or not, he should first account for the stumpage at its market value.

The parties desiring that this and other legal questions, which in the opinion appear, should be settled before submitting the case to the jury, the presiding justice ruled, *pro forma*, that the plaintiff's construction of the contract was correct. The case was submitted to the law court to stand for trial on questions of fact after the contract has had a construction on questions of law.

*J. Varney,* for the plaintiff.

*F. A. Wilson & C. F. Woodard,* for the defendant.

PETERS, J. This controversy relates to the interpretation and

effect of a written agreement. The defendant was to convey to the plaintiff an undivided sixth of certain land, when he received what he had advanced therefor, and certain costs and expenses, "from the stumpage cut on the land." The parties anticipated that the stumpages would pay for the land within some reasonable time. The word "stumpage" has in this state a definite signification. It means the sum by agreement to be paid an owner for trees standing (or lying) upon his land, the party purchasing being permitted to enter upon the land and to cut down and remove the same away. In other words, it is the price paid for a license to cut. Usually, the price is measured according to the thousand feet cut in an operation, but it may be by the tree or the cord or the like. As a general thing, the practice is for the owner in some form of agreement to retain a lien upon the lumber cut for payment of the stumpage due thereon. Stumpage on lumber is somewhat of the nature of a percentage paid on copyright, or of a royalty for the use of a patent, or a duty paid on mineral productions

By the terms in the agreement, "stumpage cut upon the land" was intended stumpage received for operations permitted to be carried on upon the land. It is clear to us, that the plaintiff is entitled to a conveyance whenever lumber enough has been taken from the land the stumpages upon which are sufficient to pay for the land and all the costs, profits and expenses provided for by the contract. Of course, the defendant would not be held to allow for stumpages which he has failed to collect of other persons, where the loss is in no way attributable to a want of proper care and caution on his part. But he must account for the value of the stumpages when he has carried on the operations himself. Stumpage in the sense of the agreement accrues, whether the defendant sells the permits or licenses to cut to other persons or uses the privilege himself. The plaintiff is interested in the profits and losses incident to the business of selling rights to cut, but not in the business of operating upon the land itself. Otherwise, the plaintiff would be a partner with the defendant and his business associates. The defendant must account for his own cuttings at a reasonable price therefor, no price being agreed

upon. He sells the permits to himself where he operates, and to himself and partners where they jointly carry on the operation.

How shall prices and values be ascertained where the defendant and his partners have taken the lumber from the land? The ordinary rules apply. If there was a fixed market price for stumpage, that must govern. But market rates cannot rule as certainly with respect to rights to cut lumber as with much other property, because townships of land are so variously and differently situated. One township may afford much better facilities for lumbering thereon than another. In such case, several things may be considered; such as proximate market rates, the value of logs at their place of destination, and the costs and risks of getting them there. The rule laid down in *Berry* v. *Dwinel,* 44 Maine, 255, and approved in subsequent cases in this state, might apply with more or less force according to circumstances. It was there held that, where goods have no market value at the place of delivery, the value at such place may be determined at the nearest place where they have a market value, deducting the extra expense of delivering them there.

These are all the points which we think the necessities of the case require us to consider. Upon this interpretation and construction of the written contract,

*The action stands for trial.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.