Van Vorst, J.
This is a hearing upon a demurrer interposed by the defendants to the plaintiff’s complaint.
*325 The grounds of demurrer are,
First. That there is a defect of parties defendant.
Second. That the complaint does not state facts sufficient to constitute a cause of action.
*326 The principal relief sought by the plaintiff’s complaint is, that a certain syndicate agreement bearing date the first day of December, 1882, to which the *327 plaintiff, the North River Const action Company, the defendants and others are parties, may be rescinded as between the plaintiff and the defendants, and that the *328 defendants may be adjudged to pay to the plaintiff the several sums of money, in the aggregate amounting to $150,000 and upwards, paid by him to the defend *329 ants, under and in pursuance of the terms of the syndicate agreement.
The plaintiff received from the defendants two *330 hundred first-mortgage bonds of the New York, West Shore and Buffalo Railroad Company, of the par value of $200,000, which, under the agreement subscribed *331 by Mm he had agreed to take, one hundred absolutely, and one hundred under the exercise of an option, upon the terms and conditions mentioned in the agreement.
*332 These bonds the plaintiff offers to return to the defendants.
Notwithstanding the positive allegations of fraudu *333 lent representations alleged to have been made by the defendants to the plaintiff, to induce him to sign the syndicate agreement and to incur its obligations, and *334 which allegations, for the purposes of this demurrer, the defendants admit, it is urged on their behalf, that the plaintiff is not entitled to the equitable relief *335 demanded of the defendants, for the reason, amongst others, that by the terms of the syndicate agreement the plaintiff purchased the bonds from the construction *336 company, the party of the first part thereto, which was to receive from the defendants the moneys therefor after they should have been paid by the subscribers to the defendants, as the bankers for the syndicate.
*337 Confining attention exclusively to the syndicate agreement, the construction company is declared to be the sellers of the bonds, and the defendants were the bankers of the syndicate subscribers.
The defendants were to pay over to the construction company the moneys received by them from the subscribers, and were to receive the bonds from the company, and deliver them to the subscribers. The defendants were entitled to receive from the subscribers as compensation for the negotiation of the affairs of the syndicate one per cent, upon the par value of the bonds purchased from the construction company, and sold or negotiated by or through them. The agreement secured to the defendants other substantial advantages not necessary at this moment to be mentioned.
If this was all that could be urged as to the relation in which the defendants stood to the plaintiff and to the construction company, and as to their interest under the syndicate agreement, and otherwise in connection therewith, and to the bonds themselves and their negotiation, it might well be that the plaintiff’s remedy for a rescission of the agreement, and for equitable redress could not be by him limited to an *338 action against the defendant exclusively. But this is not all.
The complaint alleges facts, some of which are outside of the agreement, but which nevertheless are of such a character, and have such relation to the defendants personally, and their action with plaintiff in inducing him to sign the agreement, and others, which show their connection with, and interest in both the subject and object of that agreement, that they must be considered in determining what, if any, redress is open to the plaintiff, and against whom it may be enforced.
The complaint alleges that the defendants were bankers, and that the plaintiff was a resident of California, and a depositor with them. That he became such depositor in the year 1881, and kept at all times a large deposit of moneys with them down to the time of the transaction in question. That at the time this scheme was presented to him, he was temporarily in New York, in ill health, to the defendants’ knowledge, and was unable to examine into, or understand the syndicate agreement, or the subject matter proposed by it, and knew nothing of the value of the bonds, or the condition of either the construction or railway company. That in order to induce him to subscribe, and taking advantage of the relation which existed between himself and them, the defendants, who had, at the time, official relations to these companies, and had examined into their affairs, and knew of their insolvency and inability to fulfill their contracts, or complete the work in which they were engaged, made certain specific representations to him, in regard to the value of the securities offered for sale, the condition of the railroad and construction companies, and of the extensive terminal facilities of the former, and so favorably, but untruly, presented the subject to him, that reposing confidence in the defendants, and their *339 statements, and ignorant of the facts which they concealed, he agreed to take and pay for $100,000, of the bonds absolutely, with an option to take an additional $100,000.
The complaint alleges that the plaintiff, after he had paid for the bonds and received them, discovered that the representations made by the defendants were false. The complaint charges that these misrepresentations were intentionally made, and facts were designedly concealed by the defendants, to induce plaintiff to become a purchaser of the bonds through the syndicate agreement.
The complaint also alleges that the signature of one of the subscribers to the syndicate agreement, affixed before his own, and by which he was influenced, was not bona fide; that it was not expected by the defendants that such subscriber should pay for the bonds he had agreed to take. That plaintiff, however, believed and acted upon the belief that it was a bona fide subscription. The complaint also charges in substance that the defendants had a large pecuniary interest in the negotiation of the syndicate agreement, and its success, over and above the commissions to be paid by the subscribers, and were influenced by such interest in initiating and managing the same.
The complaint charges the defendants with having fraudulently induced him to withdraw his bonds from sale, and that, taking advantage of the provisions of the syndicate agreement, by skillful management, in their own interest, they sold their own bonds at a large profit.
This abbreviated statement presents the substance of the plaintiff’s narration of the manner in which he was induced to sign the agreement, and invest his moneys. There are other allegations to which reference is made hereafter. The truthfulness of the plaintiff’s allegations are not open to discussion here, *340 for, as aleady stated, by demurring, the defendants concede, for the purpose of this hearing, that they are true.
Upon this statement of facts, supplemented by other allegations of the complaint, it is quite clear that the plaintiff is entitled to redress. The question arises, is the plaintiff limited to the common law action of deceit, for the recovery of damages against the defendants, or is he entitled to the equitable relief demanded in the complaint? This question is much discussed in the briefs submitted by the learned counsel on both sides. But it seems to me that this question is answered when it is determined "what was the true attitude of the defendants towards the subject matter of the syndicate agreement, and the material interest they had in its successful negotiation. Were they simply agents of the construction company for the sale of the securities, and bankers for the plaintiff and other subscribers, to receive their moneys and pay over the same to the construction company upon the receipt of the bonds for them ? If that was the position and relation of these defendants, the plaintiff’s remedy would be through an action at law, triable before a jury, for damages sustained through the false representations and concealments of which complaint is made (McMillan v. Arthur, 98 N. Y. 167).
But it is quite clear that before the defendants approached the plaintiff with their proposal that he should become a purchaser of these bonds, they already had a definite agreement with the construction company, and were agents of the railway company. The terms of their agreement with the construction company do not appear to have, been disclosed by the defendants to the plaintiff, nor are they stated in the syndicate agreement. But the complaint alleges that in making the representations set forth therein, as an *341 inducement to him to become a purchaser of the bonds, and in withholding from him the information in their possession as to the true state and condition of the railway company and its railway, terminal and other property, and the true state and condition of the construction company, “they were actuated by a corrupt and fraudulent design, and engaged in the execution of a fraudulent scheme conceived in advance, to secure to themselves the great profits and emoluments which they expected to realize under their agreement with the said North River Construction Company from the sale of said bonds and shares, and the use of the proceeds thereof in their business, and the monopoly of the market for the bonds subscribed for by them.”
By their agreement with the construction company, as the complaint alleges, the defendants had, prior to their application to the plaintiff, “already entered into a contract with the North River Construction Company, by which the exclusive right to purchase the said bonds and stock, mentioned in the said syn-. dicate agreement, was secured to the said defendants down to, and including December 7, 1882, upon terms, specified in their said agreement ” with the construction company.
The plaintiff’s counsel urges that the defendants, having secretly purchased, or having secured an agreement for a purchase by themselves, initiated the syndicate scheme, to put themselves in funds with which to pay for the bonds, and in this way realize a large profit.
If, professing to act for the subscribers to the agreement for the purchase of the bonds from the construction company, they had already, by a private agreement, secured the purchase for themselves, they should be regarded, as between themselves and the subscribers, as the secret sellers, it matters not how and in what *342 terms they may have expressed the transaction in the syndicate agreement. A person cannot act as an agent for others, in a purchase for himself. Although the fact of such ownership is not disclosed, this proposition is none the less true. If the defendants were in substance, although not in form, the real vendors of these bonds for themselves, or to their profit, then, under the allegations of the complaint, the equitable remedy invoked in this action was properly chosen by the plaintiff.
But under the allegations of the complaint, the defendants’ option to purchase from the construction company expired on December 7, and before that day the syndicate was formed, and the agreement was actually signed by the plaintiff on December 6, others having previously signed. As the construction company, as well as the defendants, became parties to that agreement, it may have been regarded by them as the way in which the defendants’ exclusive right to purchase might be exercised, and as a substitute for any agreement between them on the subject.
The syndicate agreement, as has been seen, bears date December 6—six days before the defendants’ option to purchase should expire. But that view does not obviate the difficulty suggested by the fact, pointedly alleged, that when the defendants applied to the plaintiff to purchase from the construction company, they themselves had an undisclosed option in their own favor, which was unexpired, upon terms which were not explained.
But the complaint further alleges that the defendants, prior to their application to the plaintiff, had secured the appointment of themselves, as financial and transfer agents of the construction company, and the promise of a like appointment as agents of the railway company, “ and had also secured for themselves an agreement for compensation for services as *343 such agents, equal to 5 per cent, upon the par value of all bonds sold under the syndicate subscription.” ■
It is quite true that the syndicate agreement itself recites the fact, that the defendants were the financial agents of the two companies, and were, as such, to perform certain services on behalf of the two companies in respect to the syndicate agreement, and were to be paid a compensation for such services by the companies, “ as had been agreed between them.” The syndicate agreement does not, however, state that their compensation at all depended upon the amount of bonds which should be sold by them, or that it was fixed by a percentage upon the par value of the bonds sold. Five per cent, upon the par value of the bonds sold under the syndicate agreement, of itself amounts to $1,000,000, In addition to this compensation, they were to charge the subscribers one per cent, in addition to their expenses.
In any light, therefore, in which this matter may be turned, the defendants had a direct pecuniary interest in the subject and object of the syndicate agreement, over and above the compensation they were to receive from the subscribers, whose bankers and agents they professed to be.
As between themselves and the plaintiff, there can foe no reasonable doubt that the defendants were bound to exercise the utmost good faith. They were called upon to make a full disclosure of their interest. Concealment of material facts could not be justified, and when they spoke it was their duty to speak truly. These propositions are applicable, in so far as the plaintiff is concerned, although the subscribers may have been advised by the syndicate agreement, that the defendants had an interest thereunder, over and above the commissions they were'called upon to pay.
The plaintiff and defendants were not standing at *344 arm’s length, as strangers. The plaintiff was ignorant of the subject matter, the defendants were completely informed. The defendants stood in a peculiar relation towards the plaintiff. They were bankers, and he was a depositor with them. This relation is associated with personal trust and confidence. It was because of that relation that the defendants made their proposition to the plaintiff. The plaintiff was sick, incompetent intelligently to inquire or to judge. They were the custodians of his funds. The defendants knew of the plaintiff’s illness, and of his ignorance of the railway company; and of its means and prospects they were advised, as they were of the fact that if he purchased any of the bonds he would do so because of his confidence in their statements.
I am persuaded that the facts entitle the plaintiff to redress in equity. Outside of the question of the abuse of confidence reposed, there is enough in the fact that the contract was secured through misrepresentation and concealments, to warrant a court of equity to rescind and set it aside as against the defendants.
The plaintiff’s counsel also urges that equitable relief is open to the plaintiff, because, by the terms of the syndicate agreement, the defendants and plaintiff stood to each other in the relation of partners, and the defendants were also trustees for the subscribers. The privilege was reserved to the defendants to become subscribers to the agreement, and to take a portion of the bonds, and they did so, and were, as such subscribers, entitled to share with the other subscribers in the profits to be realized through certain operations under the agreement, growing out of the purchase and sale of bonds.
The defendants were, without doubt, trustees for the subscribers. Each subscriber gave to the defendants full power and authority to act for him in respect to his subscriptions, and in the execution of the *345 syndicate agreement they were authorized to incur expenses and make disbursements. For a breach of duty or obligation growing out of this relation, the defendants would be accountable in a court of equity.
But the peculiar relief sought in this action,—the rescission of the agreement,—does not arise out of abuses subsequent to the making of the agreement, but for what transpired before, and contemporaneous with the signing of the same. The action is for a cancellation of the instrument, and not for an accounting by partners or trustees, or a review of their conduct in administering the enterprise, except incidentally. The plaintiff might have forborne, had he so chosen, to ask for a rescission ; he might have concluded to hold the bonds and sue for damages, and thus affirm the contract.
But he had a clear right, if defrauded, to be placed, in so far as he was concerned, in a court of equity, in statu quo. 0 This would involve a disaffirmance of the contract on his part, so soon as he discovered the fraud, and a return of, or an offer to return, the securities, as a condition to the recovery of what he had paid. I cannot say absolutely that the plaintiff’s remedy, in an action for deceit, would be as complete as that which a court of equity would afford. If the plaintiff has been injured in the way and to the extent that his complaint alleges, a complete remedy would be through a return of the bonds and the restitution to him of what he has paid. Besides, a complaining party has a right to avail himself of the rules respecting the efficiency of proof to establish frauds, and the presumption growing out of the relations of the parties, which equity recognizes, which do not obtain in actions at common law.
Equitable jurisdiction may be exercised upon an instrument unduly obtained, when a court of law could not enter into the question (Jackson v. King, 4 Cow. *346 207, 220). That may seem an extreme doctrine, since legal and equitable remedies are now administered by the same tribunal, under the constitution of this State. But the maxims and principles of equity were neither abolished nor changed when the court of chancery ceased to exist. The supreme court administers equity according to its established rules and principles..
Lord Mansfield acted upon the doctrine that a deed could not be fraudulent unless it be fraudulent both at law and in equity, and that courts of law have a concurrent jurisdiction to suppress and relieve against fraud. But the distinction above suggested is clearly recognized by Lord Hardwioke, as it is by chancellors in this State. In Hall v. Perkins (3 Wend. 626, 631), Savage, Ch. J., says: “ Fraud is often the subject of inquiry in a court of law, as well as in equity. There is a difference, however, that at law fraud must be proved.” The learned judge proceeds to present the various heads of fraud, against which equity will relieve, as formulated in the leading case (Chesterfield v. Jansen, 2 Ves. 155), which in a large sense is supposed to cover every case of fraud, whether actual, apparent, or presumed. The general statement in that case is made, that a court of chancery “ has an undoubted jurisdiction to relieve against any species of fraud.”
Besides, the power which courts of equity have of investigating directly, and disposing of the whole matter, both of the rescission of an impeachable contract, and the awarding compensation or restitution, in one proceeding, avoids a repetition or circuity of legal actions.
The learned counsel for the defendants, in their brief submitted, properly say, “ The precise relations of the parties to a syndicate agreement like this, have never been judicially determined.” Syndicate agreements similar to this are modern inventions, and cases *347 arising under them are novel in many of their features, and call for the application of equitable principles and doctrines, to their particular circumstances, such as is adapted to work out justice and prevent wrong.
With their proposition to purchase these bonds, submitted by the defendants to the plaintiff, large powers were asked for by them, and valuable interests were sought to be secured through the syndicate agree ment. But so great was the confidence reposed that the plaintiff stated to the defendants, when he signed the instrument, that he would not give such power or authority to any other person or firm whatever.” So great confidence reposed, only intensified the duty, on the part of the defendants, to exercise the utmost good faith in all that they should represent to the plaintiff to induce him to subscribe to the instrument, and to observe the same good faith in their management of their trust under the agreement.
It is not necessary to question the proposition, that, when the nature of the injury complained of is such, that a legal action is the appropriate and efficient remedy, the party will be remitted to such proceeding.
But if I am correct in the conclusion reached with regard to the true grounds of the plaintiff’s complaint, and the relief to which he is entitled, a legal action would not afford a complete remedy.
That the plaintiff demands in substance, through the judgment of this court, the payment of a sum of money, is no objection. The return of this money is not asked as unliquidated damages, but as an incident, and a necessary complement to the rescission which he demands. When a court of equity has jurisdiction of a cause of action, it is not wanting in power, through Its decree, to order the payment of money to which a complaining party is entitled, upon the rescission of a contract. In suits commenced in equity for the spec! *348 fie performance of contracts relating to real property, or personal, when the remedy is proper, it often happens, that consideration money paid is adjudged to be repaid.
In Mayne v. Griswold (3 Sandf. 463), it is stated that: “ When the object of a suit is to have a contract rescinded, and declared void for fraud, equity has jurisdiction, although the same amount of money will be recovered on such rescission, as would be given as damages in an action of law. The jurisdiction of the court of chancery in matters of fraud is coeval with its existence, and it is not affected by the circumstance that there is a concurrent remedy at law.”
The fact that the syndicate agreement, which by its terms is executory, has become substantially an executed instrument, through the payment of the money, and the receipt of the bonds by the plaintiff, affords no reason for refusing equitable relief, and turning the plaintiff over to a suit for damages. It is no answer to an action for a rescission of an instrument upon adequate grounds, that the transaction has been completed. It would, however, be a good answer, that it had been executed by the complaining party, with knowledge of the fraud, or that the status quo, without the defendants’ fault, could not be restored.
In Mayne v. Griswold, supra, relief was granted, although the plaintiff had paid for and received the bonds. To the end that a party to such contract, through whose fraud it had been induced, should not be at liberty to interpose the same asa shield,in a suit against him for damages, or otherwise, it is within the province of a court of chancery to condemn it for the deceit in which it originated.
But in truth the contract, according to the allegations of the complaint, has not been altogether executed, as the defendants have presented, and have *349 still outstanding, a claim against the plaintiff thereunder for his proportion of certain expenses incurred by them thereunder. t
But it is urged on the defendants’ behalf that a return of the securities by the plaintiff to them is not a restoration of the status quo, and that, therefore, the equitable relief demanded is not applicable. There are cases which hold that a contract cannot be rescinded or its operation annulled, even when steps are taken for the purpose as soon as the fraud is ascertained, if anything has occurred to prevent the restoration of the parties to their original position, or the return of the property in the plight in which it was when delivered.
That proposition, I am sure, is stated too broadly and unqualifiedly. Two principal things have occurred in this connection since the making of the agreement. The moneys paid by the plaintiff to the defendants have been paid over by them to the construction company under the contract, and the bonds themselves have become greatly depreciated. The construction ' company, as well as the railway company, have become publicly insolvent, and they are in the hands of receivers.
Conceding that the moneys have been paid to the construction company, now openly insolvent, under the allegations of the complaint, the provision in the contract for such payment was a part only of a scheme “ previously conceived ” to injure and defraud the plaintiff. The decline in the price of the bonds in the market is owing to no fault on the plaintiff’s part, but it follows from the fact alleged that both of these companies were in fact insolvent and unable to fulfill their contracts, to the knowledge of the defendants, at the time the syndicate was formed.
The right of rescission is summi juris. The complainant must do all that he can, and that the condi *350 tions will allow, to restore the parties to their original condition. But if, through the operation of an impeachable contract, without the plaintiff’s fault, or through the action of the defendants themselves, there cannot be a complete restitutio in integrum, an inability on the plaintiff’s part will not defeat his action for equitable relief, and he will be restored to his original condition, in so far as it can be accomplished.
That the other subscribers to the syndicate agreement, and the construction company, are not made parties to this action, constitutes no valid objection to its prosecution against the defendants. If the plaintiff has been injured in the way of which complaint is made, it was through the defendants’ acts, it was their agency and representations exclusively which brought the plaintiff into connection with the syndicate agreement. The plaintiff’s relation to the defendants, as has been stated, was peculiar from the beginning. No other subscriber may have the same grounds of complaint as those alleged by him. No urgency on the part of the other subscribers could prevent the prosecution of the plaintiff’s suit, for. the relief he seeks of the defendants. No other subscriber would be prejudiced in any way by a decree in the plaintiff’s favor against the defendants.
The construction company is publicly hopelessly insolvent. Nothing can be recovered from it, by either the plaintiff or the defendants, even if contribution could be adjudged between the defendants and that company. If the defendants have paid over the money to the construction company, under the allegations of the complaint, that presents no reason for making it a party.
The decree, if plaintiff should be entitled to one, could be satisfied without affecting that company.
It is asked by the complaint only that the contract be rescinded as between the plaintiff and the defend *351 ants, who, having an interest in the subject, negotiated the agreement with the plaintiff, to their profit at liis cost. Besides, it is claimed by the plaintiff, that, under the allegations of the complaint, the defendants have in their hands large gains and profits accruing to them under the agreement, out of which restitution in equity could properly be made. As the plaintiff’s moneys cannot be followed into the hands of the insolvent construction company, nor any recovery be had of it, the defendants, having funds, the fruits of their negotiations, should make restitution to him.
But it is urged by the learned counsel for the defendants that the plaintiff ratified the agreement, received benefits under it, and that it is too late for him now to seek to disaffirm it. If, with knowledge of the fraudulent representations and concealments of which he now complains, he voluntarily received benefits under the agreement, that would be a waiver of the fraud, and would be a good answer on the merits. For while a claim for damages can be satisfied only by actual payment, or a release, a right of rescission may be lost through an unconditional acquiescence in the instrument, and an election to affirm once made is final and irrevocable.
The plaintiff’s acts, disclosed by the complaint, which are claimed to be an affirmance of the instrument, are the receipt by him upon January 2, 1884, of the moneys secured by the coupons, due on January 1, 1884, and the acceptance by him on January 11, of one-half of the bonds for which he had previously paid.
The material question in this connection, however, is, does the complaint show that the plaintiff had become acquainted with the facts constituting the frauds of which he now complains, when he received the moneys and accepted the bonds % To render an election to confirm conclusive, it must be made with a *352 full knowledge of the facts. “To fix acquiescence upon a party, it should unequivocally appear that he knew the fact upon which the supposed acquiescence is founded,” and in order “ to constitute a valid confirmation a person must be aware that the act he is doing will have the effect of confirming an impeachable transaction” (Note to Fox v. Mackreth, 1 White & Tud. Lead. Cas. in Eq. 156, 157).
Upon a trial of an issue of fact upon the merits, it is often a question of much difficulty to determine whether a party has elected to confirm a voidable contract, under all the facts and circumstances of the case, appearing in evidence. Here the question arises upon a construction of a pleading. The complaint alleges that the plaintiff, “ after the discovery of the said concealments, frauds,” &c., and on January 28, 1884, some seventeen days after he received the last bonds, took the first steps in the way of rescission, by serving a notice upon the defendants of his intention to -rescind, accompanied by an offer to return the bonds, and the moneys received on the coupons. The complaint does not fix the day of that discovery.
Conceding the rule which formerly existed as now existing, in a qualified way,—that a pleading is construed against the pleader,—I do not think that I would be justified in deciding that the complaint shows a discovery by the plaintiff, of the grounds of his complaint, against the defendants before he accepted the coupon moneys, or the bonds. In order to agree with the the defendants’ contention, I would be obliged so to hold. That view would be exceedingly technical, and in direct opposition to the whole theory of the plaintiff’s cause of action, as disclosed by his pleading.
Should the defendants have desired to be informed of the precise day of the discovery made by the plaintiff, an application should have been made by *353 them to have the complaint in this regard made more definite and certain. A demurrer is not a proper remedy to cure the uncertainty , ambiguity or indefiniteness of a complaint.
I have substantially considered all the points raised upon the argumen t of this issue of law. The learned counsel on both sides have submitted able and elaborate briefs. The whole case, presented by this issue, having been thoroughly discussed, and numerous authorities cited, the case necessarily invited, and the efforts of counsel merited, and have received, the most careful consideration on my part.
As I have already stated, for the purpose of this discussion, through their demurrer, and that only, the defendants have conceded the allegations of the complaint to be true, but so conceding, they have earnestly urged, that they do not constitute a cause of action. The result reached by me, as already indicated, is, that upon neither of the grounds urged, can the demurrer be sustained. The complaint is sufficient, and the defendants must be put to their answer on the merits. It was not necessary to decide whether or not the complaint set up facts sufficient to show a cause of action for redress at law by way of damages. The prayer of the complaint asks for equitable relief only, and upon a demurrer, under the authorities, to such relief the plaintiff is limited (Swart v. Boughton, 35 Hun, 281).
Among the authorities cited by the defendants upon the point chiefly discussed, is that of Butler v. Livermore, 52 Barb. 570. Upon an examination of that case, I do not find that the peculiar facts disclosed by the complaint in this case, with respect to the true relations existing between the plaintiff and the defendants, and the defendants’ relation to the subject and object of the syndicate, bring this case within the decision of Mr. Justice Sutherland, in the case cited.
*354 Judgment for plaintiff on the demurrer, with liberty to the defendants to answer on payment of costs.
II. Motion for an order to have the bonds, which plaintiff offered to return to defendants as a condition of seeking rescission of the contract, sold, the proceeds to stand in place of the bonds and await event of action.
The plaintiff made an affidavit setting forth his possession of the bonds in question; that the West Shore Railway Company was openly and notoriously insolvent and in the hands of receivers ; that it had not paid interest on the bonds since January 1, 1884 ; that the receivers had issued certificates to the amount of $2,000,000, which were claimed to be a lien prior to that of the bonds upon the property of the company ; that its income was insufficient to pay its operating expenses, and rentals, and that the receivers were issuing certificates for such deficiency which were claimed to be a lien prior to that of the bonds ; the decline in the markét value of the bonds since the plaintiff’s purchase, and their steady decline in value since the commencement of the action ; and that, from the losing character of the business done by the receivers, it was probable that the entire value of the bonds would be almost if not entirely dissipated and lost.
The deponent also alleged that the defendants’ firm had been dissolved since his purchase of bonds, and its capital divided among the defendants, and that the defendants had met with heavy losses which had impaired their pecuniary responsibility; that the defendants had declined to stipulate that the bonds might be sold, &c.
Upon this affidavit and the complaint in the action, *355 the plaintiff moved for an order that the bonds in question be sold at public auction for the benefit of whom it might concern, and the amount realized therefrom taken and held to be the value thereof at the time of such sale, and stand in place of the said bonds, and to be credited upon the claim of the plaintiff, if he recovered in the action.
The defendants’ answering affidavits denied the alleged misrepresentation and concealment; averred the truth of their statements to plaintiff, full disclosure, good faith and their pecuniary responsibility ; and admitted the alleged refusal to stipulate for the sale of the bonds.
At the close of argument by counsel at special term, the court delivered the following oral opinion.
Andrews, J. I do not think on a motion of this kind the court should go into a scrutiny of the responsibility of the defendants. It would evidently be impossible to arrive at any accurate conclusion as to that. It is a question of the power of the court to direct such a sale, and whether, in an action of this kind, even if the court had the power, it would exercise it. The cases to which you refer are certainly not precedents for granting an order of this kind. They were cases in which property was actually in the custody of the officer of the court, and the property was expensive to keep, and therefore it was considered, though a somewhat doubtful matter, it should be sold. In this case, the property is in the hands of the plaintiff, and the plaintiff has the power to sell it; the only difference being, that, in that case, he would have to resort to his action at law. I have never known of a motion of this kind, and it seems that the counsel on both sides, after thorough examination, are unable to find any precedent. I have a very decided opinion in the matter, and I think I may *356 as well express it now, because I do not think further consideration will change my conclusion. I think the court has no power to make an order of this kind. Therefore the motion is denied.
An order having been entered denying the motion for sale of the bonds, the plaintiff moved to re-settle by inserting in the order that the motion was denied “ on the ground that the court has no power to make the order applied for.” The motion to re-settle was denied, and from the order denying both motions, plaintiff appealed.
Wm. G. Choate (Shipman, Barlow, Larocquc & Choate, attorneys), for the plaintiff, appellant. The court has power to order sale of the bonds. It is within the powers of a court of equity to authorize the disposal of perishable property when a rescission of a contract for the purchase of such property is sought (Bigelow on Fraud, 411; Neblett v. Macfarland, 92 U. S. 101 ; Scott v. Perrin, 4 Bibb, 360). Perishable property includes shares of stock in a corporation, and, by parity of reasoning, the bonds issued by an insolvent corporation (See especially opinion of Wood, V. C., in Maturin v. Tredennick, 12 Weekly Rep. 740, 742). No precedent is required to justify the court in so doing. The business of modern life calls into exercise the beneficent powers and flexible methods of courts of equity (See opinion of Miller, J., in Hawes v. City of Oakland, 104 U. S. 450, 453). The order asked for would impose no unnecessary hardship upon defendants ; and parries engaged in a fraudulent attempt to obtain an other’s property are not the objects of the special solicitude of the courts (Neblett v. McFarland, 92 U S. 101, 105). Where it is impossible for the plaintiff to restore the subject of the suit as to which he has claim for equitable relief, as if he *357 has without fault and before discovery parted with it, the court decrees damages (Maturin v. Tredennick, 12 Weekly Rep. 740). And so, also, where, though the thing still exists in specie and is within the power of the court to decree its restoration, such restoration, on account of subsequent alteration of circumstances, will work great hardship and loss, and damages will give the plaintiff substantial relief, the court will make a decree varying with the circumstances of the particular case, with or without an absolute rescission (Kerr on Fraud and Mistake, 337-344; Masson v. Bovet, 1 Den. 69 ; Warner v. Daniels, 1 Woodb. & M. 90; Scott v. Perrin, 4 Bibb, 360; Bigelow on Fraud, 412; Gatling v. Newell, 9 Ind. 572-578; Downer v. Smith, 32 Vt. 1). The subject of the suit being' these bonds, a marketable commodity, just equal in value in legal intendment to the sum of money for which they can be sold, the defendant cannot possibly be wronged by their sale under the proposed order, on the theory that if they are kept they may be worth more when restored to him by the execution of the decree. The complete answer to their complaint is, you were not entitled to have them held for your benefit. That delay was the plaintiff’s misfortune, not your right. It was the plaintiff’s right at the time of the sale to return them to you in exchange for his money, which you then, as now, wrongfully withheld from him (Bigelow on Fraud, 412 ; Neblett v. MacFarland, 92 U. S. 101, 104).
Edward Lyman Short (Davies, Cole & Rapallo, attorneys), for the defendants, respondent. I.The denial of the motion to sell was proper, as the court has no power to grant such an application. This application is believed to be without precedent, and the granting of it would work a violation of the well settled rights and duties of the parties to an action of this nature, and would defeat the condition upon *358 which final relief can alone be granted to the plaintiff. (a.) The plaintiff would defeat the right to a rescission, in this action by a voluntary disposition of the bonds pending the action (Schiffer Dietz, 83 N. Y. 300; Campbell v. Fleming, 1 Ad. & El. 40; Harris v. Equitable Life Assurance Soc., 64 N. Y. 196, 200; Masson v. Bovet, 1 Den. 69 ; Hammond v. Pennock, 61 N. Y. 145, 153; Green v. Green, 69 N. Y. 553 ; Clarke v. Dickson, E. B. & E. 148, 152. (6.) The plaintiff has determined his election, and has disaffirmed the contract, and this motion is incnsistent with the theory by which the contract is considered at an end when the purchaser declares that he no longer accepts the agreement but rejects it (Clough v. London, &c. R. R. Co., L. R. 7 Exch. 26; Reese River Mining Co. v. Smith, L. R. 4 H. L. 64,73 ; Stevens v. Hyde, 32 Barb. 171, 181; Morris v. Rexford, 18 N. Y. 552, 557. (c.) The granting of the order asked for would have been practically a present payment to the plaintiff, on account of the sum he would recover if successful. But an order directing payment of money by one party to another pending a suit, and where there is no sum in court, “ is contrary to the practice of the court” (Bogert v. Bogert, 2 Ed. Ch. 399, 404). id.) The plaintiff, having elected to disaffirm the contract, cannot now elect a different remedy, (e.) Even if the plaintiff could now elect a different remedy, the relief which the plaintiff would obtain if his motion were granted, and he was successful in his action, would be one unknown to the law in any form of action,—namely, a recovery back of the price paid, less the amount for which the bonds might be sold (Bowen v. Mandeville, 95 N. Y. 237, 240). No equivalent can be substituted for the bonds (Scovil v. Wait, 54 N. Y. 650 ; Krumm v. Beach, 96 N. Y. 398, 407).
II. There is no basis for maintaining in this court that the special term denied the motion to sell for *359 want of power, because the record is silent, since no ground is stated in the order, and there is no “opinion ” to that effect either referred to in the order or a part of the record. That the “ opinion ” must be expressly referred to in order to constitute a part of the record, see Tolman v. R. R. Co., 92 N. Y. 353, 356. That the terms of the order must be ambiguous or unintelligible, see Snyder v. Snyder, 96 N. Y. 88, 92, and Salmon v. Gedney, 75 N. Y. 481. That even in the simple case of there being no evidence that the motion was not decided on the merits, it must be held discretionary, see Goldberg v. Utley, 60 N. Y. 427, 429. See, also, Martin v. Hicks, 1 Abb. N. C. 341, 346, Davis, J. ; Cushman v. Brundrett, 50 N. Y. 296 ; People ex rel. Cashman v. Heddon, 32 Hun, 299, 301.
The general term affirmed the orders appealed from, without opinion.