## ALFRED HIGGINS, RESPONDENT, *v.* JACOB CROUSE, APPELLANT.

*Contracts — rescission — statute of limitations — time extended until the discovery of the fraud — a party is bound to exercise reasonable diligence.*

In 1864 a corporation was organized to produce petroleum oil, of which Jacob Crouse was a director, who, in 1865, sold to Alfred Higgins some of his stock, at the same time making certain representations as to the property of the company, which were false. Higgins received a certificate which stated on its face that it was "liable to further calls." The oil land was in Pennsylvania. Higgins never received either notice of calls or dividends. In 1866 he heard that the prospects were not good. In 1871 he had made up his mind that he had lost his money. In 1889 he investigated and discovered the fraud. At all times he had lived in the same city with Crouse, and in the same city in which the officers of the corporation resided.

In an action in equity, brought by Higgins against Crouse to rescind the sale:

*Held,* that the fact that the corporation was not a party would not prevent the action being maintained.

That the transaction was wholly one between Higgins and Crouse, and, therefore, the corporation, so far as shown, had no interest therein.

That the fact that the value of the stock was not shown would not preclude the party defrauded from recovering his money and interest.

That, upon the facts as established, Higgins was put upon inquiry certainly as early as 1871.

That he was bound to use reasonable diligence.

That a party will be deemed to have discovered facts constituting fraud from the time when, by the exercise of reasonable diligence, he ought to have discovered them.

That, under the evidence, the action was not brought in time, under the provisions of the Code of Civil Procedure (§ 382, sub. 5), providing that, in an action other than for a sum of money, on the ground of a fraud cognizable in chancery, the cause of action is not deemed to have accrued until the plaintiff discovers the facts constituting the fraud, and that the six years' statute of limitations was a bar thereto.

APPEAL by the defendant Jacob Crouse from a judgment of the Supreme Court, entered in the office of the clerk of the county of Onondaga on the 2d day of June, 1891, adjudging that a contract for the sale of certain stock between the parties be rescinded, that the defendant take it back and have it retransferred to himself, and that the plaintiff recover the sum of $3,215.50 as damages, with costs.

This action was commenced July 3, 1889. In the complaint, as originally framed, the plaintiff sought to recover damages for fraud in the sale to him by defendant on the 4th of November, 1865, of 150 shares of the capital stock of the "Shaffer Farm Oil Creek Company of Pennsylvania" at the price of $1,200, the par value being $1,500. It was alleged that at the time of the purchase plaintiff gave the defendant his note for $1,200, payable in three months, with interest, and that at its maturity on the 7th of February, 1866, he paid it and received from the defendant the certificate of stock. It was also alleged that the fraud was not discovered till May, 1889. Judgment was demanded for damages only, being the price paid with interest. The defendant answered, denying the fraud and setting up the statute of limitations as a bar. Afterwards, and upon leave of court, the complaint was amended. In this the allegations of fraud are more fully set forth, and it was also alleged that the stock sold by defendant to plaintiff was not issued as full paid stock, but was issued as liable to further calls and assessments; that the certificate of stock which the defendant caused to be issued by the company to the plaintiff was issued as liable to further calls; that the company is still in existence and has not closed up its business, and the defendant is liable to future assessments; that before the commencement of the suit he tendered to defendant the certificate of stock, with a transfer thereof and sought rescission of the sale, which was refused. Judgment was demanded that the contract of sale from defendant to plaintiff be rescinded; that the defendant be directed to procure a retransfer to himself on the books of the company, to the end that plaintiff be relieved from all liability as a stockholder; that the defendant pay back the price and interest, and be decreed to hold plaintiff harmless from all assessments which have been made since the sale or which may be made before the retransfer on the books of the company.

Upon the trial it appeared that on the 20th of August, 1864, "The Shaffer Farm Oil Creek Company" was organized under the laws of this State, as a manufacturing and mining company, for the purpose of producing petroleum oil, with a capital stock of $160,000, divided into 16,000 shares, the manufacturing and mining operations to be carried on in the town of Cherry Tree, county of Venango, State of Pennsylvania, and its general business operations

at the city of Syracuse, in this State. The defendant and nine others were the incorporators, and upon the completion of the organization the defendant was elected president, and A. W. Blye secretary and treasurer. Prior to this time the defendant and others were the owners of about twenty-nine acres of land in the town of Cherry Tree above named, and of a lease of three and a half acres of land in the immediate vicinity, with the right to dig wells for petroleum. In that neighborhood there were wells, one of which was a flowing well; others produced petroleum by pumping and others were non-producing. The land and lease above described were transferred to the corporation soon after its organization and defendant became the owner of one-quarter of the stock.

From September, 1864, to April, 1865, the corporation at considerable expense sunk two wells upon its property, both of which turned out to be non-producing, and were abandoned with the knowledge and assent of defendant. The test of the last one was made in June, 1865, and soon thereafter the machinery, engine and tools employed by the corporation in the digging of wells were sold. This the defendant knew. Since then no wells have been dug by the corporation on its property.

Upon conflicting evidence, the court found that in or about November, 1865, in a negotiation between plaintiff and defendant for the sale to plaintiff of 150 shares of stock, the defendant represented that "we have got the Shaffer farm property in the oil country;" "we are putting down wells with every prospect of success;" "it bids fair to be a big thing;" "the stock is selling readily at par." The latter three of these statements the court found to be false to the knowledge of defendant; and made with intent to deceive, and that relying on these representations the plaintiff consummated the transaction, giving the defendant his note for $1,200, which he afterwards, and on the 7th of February, 1866, paid. At the time of its payment he received from the company, upon the order of the defendant, a certificate for 150 shares of stock, which bears date February 7, 1866, and on its face purports to be "liable to further calls." It is signed by defendant as president and by A. W. Blye as secretary. No dividends have been received by plaintiff and no calls or assessments have been made upon him. The court also found that the plaintiff did not learn of the falsity of the representa-

tions and the facts constituting the fraud until about May 1, 1889; that he thereupon tendered back to defendant the certificate properly indorsed, and demanded that his loss be made good, which was refused; that the corporation is still in existence and plaintiff, under the certificate, is liable to future calls or assessments or other liabilities as stockholder; that the loss and damage to plaintiff was $1,200 and interest from November 4, 1865.

As matter of law, the court found that plaintiff was entitled to relief, as less than six years had elapsed since the discovery by plaintiff of the facts constituting the fraud; that he was entitled to judgment rescinding the contract for the purchase by him of defendant of the stock and revesting the title in defendant, and requiring " the defendant to receive back the said certificate for 150 shares of said capital stock, and to procure the same to be transferred to himself upon the books of said corporation, and also that he protect and save harmless the plaintiff from all future liability as a stockholder of said corporation," and that defendant pay the plaintiff the sum of $1,200, with interest from November 4, 1865, amounting to $3,215.50. Judgment was ordered and entered accordingly.

The court further found, as matter of fact, that the corporation was not insolvent, had not closed up its business, and that it contemplated renewed efforts and operations in boring for oil.

The court, upon the request of the defendant, also found that " the nature of the business of the corporation was such that their success or failure in obtaining oil was at all times contingent, depending upon the developments in the town where they were prosecuting their business and upon the course of business pursued by the corporation, and upon the contingency of their interest in successful experiments in any part of the town; and there was at all times a chance of fabulous wealth to the corporation and its stockholders in case of developments disclosing amounts of oil in sufficient quantities within the town in any territory to which they might acquire the right to experiment for their own benefit;" but it refused to find that " in this contingency the plaintiff was, as a stockholder, interested, and he had the benefit thereof at all times after February 7, 1866; and ordinary diligence would have enabled him to discover at any time the precise nature of the abandonment; to have objected to it;

to have made an effort to induce the corporation to return to further experiment on the Shaffer farm ; to have tested that farm sufficiently to show whether oil existed thereon." To this refusal the defendant excepted.

*Waters, McLennan & Waters*, for the appellant.

*T. K. Fuller*, for the respondent.

MERWIN, J. :

The defendant claims that the court erred in holding that this action was maintainable as an equity action. The court found that the transaction was entirely between defendant and plaintiff, and that it was not a purchase by plaintiff from the corporation, but from the defendant. The evidence sustains this view. That being so, an equitable action would lie. (*Bosley* v. *N. M. Co. et al.*, 123 N. Y., 550.) It would have been appropriate for the plaintiff to have made the corporation a party. The relief granted would then have been more effectual. In its present form, the judgment is, in some respects, unusual, and no precedent is cited to sustain it. The case of *Cohen* v. *Ellis* (16 Abb. N. C., 320), referred to by plaintiff's counsel, was afterwards reversed. (*Cohen* v. *Ellis*, 4 N. Y. St. Rep., 721.) Still the corporation, according to the facts found, had no interest in the matter. There were no outstanding assessments. No defect of parties was set up in the answer. If in other respects the theory of plaintiff was correct, it is not apparent that the defendant will be injured by the form of the judgment.

But the defendant says there is no evidence of the present value of the stock, and, therefore, no proper basis for the finding of damages. Still, if a cause of action for rescission is made out, then, ordinarily, by way of damages, the party would be entitled to the return of his money, with interest.

The main question upon this appeal relates to the statute of limitations. The plaintiff has been awarded relief under that provision of the Code of Civil Procedure, section 382, subdivision 5, which provides that, in an action to procure a judgment, other than for a sum of money, on the ground of fraud, in a case which, on the 31st day of December, 1846, was cognizable by the Court of Chancery, the cause of action is not deemed to have accrued until the

discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud. In the Code of Procedure, which was in force at the time of this transaction, and for more than six years thereafter, section 91 enumerated the cases in which action must be brought within six years, and subdivision 6 thereof was as follows: "An action for relief on the ground of fraud, in cases which heretofore were solely cognizable by the Court of Chancery; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

The defendant claims that the rule upon this subject is that the statute begins to run, not from the time when knowledge of the fraud was obtained, but from the time when, under the circumstances, knowledge ought, by reasonable diligence, to have been obtained. And reference is made to 2 Story's Equity ([13th ed.], § 1521, note *a*), where the rule is so stated. The same is said to be the rule in 13 American and English Encyclopædia of Law, 730, and many cases are there cited.

In *Mayne* v. *Griswold* (3 Sandf., 464), it was held, under a similar provision of the Revised Statutes (2 R. S. [2d ed.], 229, § 51), that a bill for relief on the ground of fraud, which shows that the fraud was committed more than six years before the filing of the bill, must not only state, by way of anticipation of the defense of the statute of limitations, that the fraud was discovered within six years, but must also show that it could not with reasonable diligence have been discovered sooner. I find no other case in this State directly on the subject. A similar view, however, has been taken in other States, having a similar statutory provision. (*Penobscot Railroad* v. *Mayo*, 67 Me., 470; *Fritschler* v. *Koehler*, 83 Ky., 78; *Boyd* v. *Blankman*, 29 Cal., 20; *Parker* v. *Kuhn*, 21 Neb., 413.) The case of *District Township of Boomer* v. *French* (40 Iowa, 601) and *Commissioners of Mower County* v. *Smith* (22 Minn., 97) are in the same direction. The statutes on this subject are collated in the appendix to Angell on Limitations.

The reason of the rule, as indicated in some of the cases, seems to be that as the time of discovery is generally entirely within the knowledge of the plaintiff or party in interest, and as, therefore, it is difficult or impossible for a defendant to negative or rebut the

positive allegation on the subject, the discovery will be deemed to have been made, or to exist, when the plaintiff or party in interest, in the exercise of reasonable diligence, ought to have found out the facts constituting the fraud.

In Angell on Limitations ([6th ed.], § 187) it is said: "The presumption is that if the party affected by any fraudulent transaction or management might with ordinary care and attention have seasonably detected it, he seasonably had actual knowledge of it." In *Kirby* v. *Lake Shore, etc., Railroad* (120 U. S., 136) it is said: "It is an established rule of equity, as administered in the courts of the United States, that where relief is asked on the ground of actual fraud, especially if such fraud has been concealed, time will not run in favor of the defendant until the discovery of the fraud, or until with reasonable diligence it might have been discovered."

The cases cited by the counsel for plaintiff to the point that the party defrauded owes no duty of diligence in discovering the fraud to the party who defrauded him, do not relate to the statute of limitations. On the other hand, it is said, in *Upton* v. *Tribilcock* (91 U. S., 55), that parties who are shareholders, and claim to be relieved on the ground of fraud, must act with the utmost diligence and promptitude.

Following, as I think we should, the case of *Mayne* v. *Griswold*, and the current of authorities in that line, the question here is whether the evidence authorizes the conclusion that the plaintiff, in the exercise of reasonable diligence, could not have discovered the facts constituting the fraud prior to six years before the commencement of this action.

The main representation, and the one which is evidently the gist of the action, was, "We are putting down wells with every prospect of success." The plaintiff testified: "I relied upon his statement that it was a big thing, and they were putting down wells and developing the property, and it was going to be a big thing." The statement that it was a big thing, or going to be a big thing, was clearly a matter of opinion, and the plaintiff gave no evidence that the stock then was not readily selling at par. The fact as to wells was that, in or before the June previous, the two wells which they had dug had been tested and found non-producing and had been abandoned, and in or before July the tools and machinery, which

they had purchased for the purpose of digging wells, had been sold and removed from the property. In other words, they had, in November, 1865, stopped digging wells, abandoned those they had dug, and disposed of their tools and machinery. These were the facts upon which plaintiff based his claim, and the discovery of which led to the action.

The plaintiff testifies that when, in February, 1866, he paid his note to defendant and received his scrip, he said to defendant that he had heard some rumors that their prospects were not very good for getting oil and he had no money to lose, and that defendant told him there was no truth in any such rumors and reassured him that everything was just as he stated when the note was given; that he made no inquiry of defendant as to what property the company had, and made no inquiries of Blye, the secretary, when he got his certificate of stock; that about a year afterward he asked defendant what the prospects were, and defendant replied that everything was all right; that he made similar inquiries of defendant several times prior to 1871, and then made up his mind that he had lost his money and said nothing more about it. From 1871 to May, 1889, the matter rested. The plaintiff testifies that, at the latter date, he wrote the defendant to take back his stock and make him good; that he had been unfortunate in speculations and his health was poor and he really wanted the money; that this was before he discovered the fraud; that the defendant came to see him, refused to pay him back, claimed it was a business transaction and was all right and fair; that the next day, or within a few days, he discovered the fraud through Mr. Blye, the secretary, he giving him the information that the grounds were abandoned months before the negotiations between plaintiff and defendant in November, 1865, and referring him to Mr. Potter for the particulars. Potter was the foreman in charge of the digging of the wells. Plaintiff saw him a few days afterwards and learned further particulars.

The plaintiff, during all this time, was a business man in Syracuse, and the officers and corporators of the company were also there. The secretary and treasurer, Mr. Blye, and the foreman, Potter, were there. He, at any time, apparently could, by inquiry, have readily ascertained when the company stopped work. He, however, made no inquiries on the subject until May, 1889. He says that he was

satisfied in 1871 that he had lost his money. He must have known that the company had, prior to that time, stopped. No dividends or assessments were made. Having made up his mind, in 1871, that the company was a failure, he was then put upon inquiry as to whether his purchase was genuine. Nothing was then put in his way. His delay from that time to 1889 is not consistent with reasonable or ordinary diligence. The case furnishes no sufficient or any explanation.

As the case stands before us, we think the evidence does not authorize the conclusion that the plaintiff, in the exercise of reasonable diligence, could not have found out the facts constituting the fraud, prior to six years before the commencement of this action. This calls for a reversal of the judgment.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.